IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JASON H.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00616 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jason H. ("Jason") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Jason alleges that the Administrative Law Judge ("ALJ") erred by finding that Jason engaged in substantial gainful activity through the date of the ALJ's decision. I find that the ALJ's conclusion that Jason engaged in substantial gainful activity during the relevant period is not supported by substantial evidence. As such, I **RECOMMEND GRANTING in part** Jason's Motion for Summary Judgment (Dkt. No. 16), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18) and **REMANDING f**or further consideration by the Commissioner.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jason failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## **CLAIM HISTORY**

Jason filed for DIB in May 2017, claiming that his disability began on December 30, 2016, due to chronic migraine headaches, brachial plexus nerve graft, bicep tendon removal, Addison's disease, Hemochromatosis, chronic Lyme's disease, lung and thyroid nodules, three ulcers, hernia, ulnar nerve damage in both arms, left eye blindness, and right eye vision problems. R. 214–218. Jason's date last insured was December 31, 2021; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB.[4] R. 215; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Jason's applications at the initial and reconsideration levels of administrative review. R. 55–70, 71–88. On August 9, 2019, ALJ Joseph T. Scruton held a hearing to consider Jason's claims for DIB. R. 25–54. Counsel represented Jason at the hearing, which included testimony from vocational expert Asheley Wells. On November 26, 2019, the ALJ entered his decision finding that Jason had engaged in substantial gainful activity from December 2016 until at least December 2018, and there had been no continuous 12-month period during which Jason was not engaged in substantial gainful activity, and thus, Jason was not disabled. Jason, a seventh-generation farmer, owns a half-interest in his family farm, along with

---

[4] Jason was 40 years old on his alleged onset date and 43 years old on the date of the ALJ's opinion, making him a younger person under the Act. R. 71.

3

his father and grandfather; the ALJ determined that Jason's work on this farm amounted to substantial gainful activity. R. 16, 29.

If a claimant is working and that work is substantial gainful activity, the Commissioner will find that he is not disabled regardless of his medical condition or his age, education, and work experience. See 20 C.F.R. § 404.1520. Thus, because the ALJ determined at step one of the five-step[5] process that Jason was not disabled, the ALJ denied his claim for benefits without analyzing his claims under the remaining steps. See Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990) (discussing the five-step process and noting that "the first step determines whether the claimant is engaged in 'substantial gainful activity' [and i]f the claimant is working, benefits are denied"). Jason appealed the ALJ's decision and the Appeals Council denied his request for review on September 11, 2020. R. 1–3.

## ANALYSIS

The ALJ found Jason provided services to the family farm that were significant to the operation of the business, which coupled with his earnings, meant Jason was engaging in substantial gainful activity and was not disabled. Jason argues that the ALJ misapplied the regulations governing whether he provided significant services in the operation of his business, and thus substantial evidence does not support the ALJ's finding. Jason concedes that his earnings amounted to substantial income; however, he maintains that because he owns a half-

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

4

interest in the family farm, he received passive income, without actually providing any significant services. Further, Jason emphasizes the loving "familial relationship" between the co-owners of the business and resulting desire to ensure him a "certain guaranteed income." Pl.'s Br. at 6–7, Dkt. 17. Indeed, the Regulations specifically acknowledge that more than income alone must be used to evaluate substantial gainful activity for self-employed individuals because of factors such as profit sharing.

The Regulations define substantial gainful activity[6] and evaluate the work activity of self-employed individuals as follows:

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. . .. We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services.

20 C.F.R. § 404.1575(a)(2). The regulations then set forth three tests for determining whether a self-employed person has engaged in substantial gainful activity. Here, the ALJ applied the first test only: where an individual has "engaged in substantial gainful activity if [he] render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business."[7] Id.; R. 15.

---

[6] Under the Regulations, substantial gainful activity is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. "Substantial" work is work activity that involves doing significant physical or mental activities. Id. § 404.1572(a). Work activity may be "substantial" even on a part-time basis or if the individual does less, is paid less, or has less responsibility than when he worked before. Id. Work activity is "gainful" if it is the kind of work that is usually done for pay or profit, whether or not a profit is realized. Id. § 404.1572(b).

[7] Social Security Ruling 83–34 directs that unless it is "clearly established that the self-employed person is not engaged in SGA on the basis of [test one], both the second and third SGA tests concerning comparability and worth of work must be considered." See Robertson v. Astrue, No. 5:08CV00056, 2009 WL 2143731, at *4 (W.D. Va. July 20, 2009), report and recommendation adopted, No. CIVA 5:08CV00056, 2009 WL 2767653 (W.D. Va. Aug. 24, 2009) (citation omitted).

Here, there is no dispute regarding the "substantial income" part of the test.[8] Jason acknowledges that he has received substantial income from his farm business. Jason's records show self-employment income of approximately $3,000 and $2,100 per month in 2017 and 2018, respectively, well above the threshold for substantial gainful activity of $1,180 per month in 2018. R. 14–15. Average monthly earnings that exceed the income guidelines "will ordinarily show that [a claimant has] engaged in substantial gainful activity [,]" however, a claimant may rebut that premise. Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir. 1991) (citing 20 CFR § 404.1574(b)(2)); see also Miller v. Astrue, No. CIV.A. 8:10-1142-HMH, 2011 WL 1576203, at *4 (D.S.C. Apr. 7, 2011), report and recommendation adopted sub nom. Miller v. Comm'r, Soc. Sec. Admin., No. CA 8:10-1142-HMH-JDA, 2011 WL 1561058 (D.S.C. Apr. 26, 2011) (noting that "[i[f an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity").

The dispute here centers on the second prong of the test, whether Jason was providing "significant services" to the farm. When an individual's business involves the services of more than one person, as is the case here, where Jason is part owner of the farm with other family members, "significant services" is defined as:

> Contribut[ing] more than half the total time required for the management of the business, or [] render[ing] management services for more than 45 hours a month regardless of the total management time required by the business.

---

[8] The substantial income part of the test requires the ALJ to first determine the amount of "countable income," comprised of the claimant's net income and then "deduct the value of any significant amount of unpaid help furnished" by others, and then determine if it is substantial under the Regulations. SSR 83-34 at *4; 20 C.F.R. § 404.1575(c).

20 C.F.R. § 404.1575. Thus, a self-employed individual who provides management services for more than 45 hours a month meets the "significant services" test regardless of how much total management time the business requires.

The ALJ found that Jason "very likely rendered management services for more than 45 hours a month, meaning he rendered significant services." R. 16. To support this conclusion, the ALJ relied primarily on the following evidence: (1) a Work History Report where Jason reported working at his family farm from 2012 to 2017 (R. 237); (2) that Jason's earnings did not decrease significantly after his alleged onset date; and (3) IRS and tax forms 1040 and K-1 classifying his income as "nonpassive income."

However, the ALJ's explanation of how this evidence showed that Jason worked more than 45 hours a month providing management services for the farm was deficient and confusing. First, the Work History Report applies to Jason's work on the family farm from 2012 to 2017 and reports 5-8 hours of standing and walking and 2-3 hours of sitting per day. R. 16, 232, 237. The ALJ uses the Work History Report to argue that this "is approximately a full-time schedule." R. 16. However, Jason's alleged onset date for disability was December 2016, and he writes in the Work History Report that since his Addison, Lyme Disease, and Hemochromatosis, he "cannot carry on daily activities." R. 237. Further, Jason specifically testified at the hearing regarding his work on the farm as follows:

> Jason: [S]ince I was diagnosed with this Addison's disease and adrenal failure, and the hemochromatosis, my daily life function has been very limited. I never know from day to day how long I'm going to be able to function or if I'm going to be able to function that day.
>
> ALJ: All right. Well, you're not answering my question though, just to be kind of specific. What contribution do you make to the farm in terms of anything? Supervision, management, discussion with family members of how the farm will be run, anything . . . of a physical nature, even if it's in a truck or a vehicle going around to see that certain

> things are accomplished by others or what have you? Anything connected to the farm, do you contribute to the farm?
>
> Jason: One day I might be able to go to the farm and be riding around for an hour checking fences, like you're saying, making sure the cattle are where they're supposed to be, the feed bunks are – the cattle are fed and everything and during that hour worth of time, my sugar might drop to 56, and then I'll have to go in and regulate that and take care of that. So – and then I might be down for another two or three days trying to recover from that episode. But yes, I can go sometimes for a limited amount of time but I never know with this health condition how long that's going to be and how long its going to take to recuperate from that if I do have an episode.

R. 33–34. Significantly, nothing in this testimony indicates Jason "very likely" worked more than 45 hours a month for the farm, as the ALJ found. At most, it suggests he may work an hour every two or three days, instead of the "approximately one and a half hours a day" required to work more than 45 hours a month. D.'s Br. at 14, Dkt. 19. Simply put, if Jason was not working more than 45 hours per month, he was not engaging in substantial gainful employment. Also supporting this, Jason testified that the farm had hired someone to take his place and "do the work that [he] was in the capacity of doing." R. 34. In its brief, the Commissioner references a handful of medical records to support its argument that Jason continued to perform farm activities after December 2016. D.'s Br. at 14, Dkt. 19. However, these records do nothing to support any specific hours spent working on the farm, but instead reference isolated activities, including one instance of baling hay, and reports of pain with sweeping and shoveling. Consistent with Jason's testimony at the hearing of unpredictable fatigue and episodes related to his impairments, one of the records cited by the Commissioner shows Jason presented to the emergency room after his wife found him unresponsive while he was "outside working," and he was "shaking all over and has been in and out of responsiveness."[9] R. 539.

---

[9] Likewise, there is also a record from Jason's treating endocrinologist stating that he "has unpredictable bouts of fatigue and sudden drops in blood glucose" due to adrenal insufficiency. R. 1708.

Jason also submitted letters from his father and accountant supporting his claim that he "is no longer providing significant services to the farm." Pl.'s Br. at 6, Dkt. 17. Jason's father provided a letter stating that Jason's "past years of investment in [the farm's] sheep and cattle has allowed a return on these investments, even though he has become unable to work." R. 179. Likewise, the accountant for the farm submitted a letter stating that Jason "has been unable to perform his duties as an employee for [the farm] since 2016. [The Farm] has been paying him sick leave during this time in an effort to help him pay his large medical bills." R. 180. The ALJ's explanation for not crediting Jason's father's letter was that "if [Jason's] income after the alleged onset date was based primarily on [Jason's] passive investment income, his income should have been much lower than before the alleged onset date when his income was based on both investment income and his actual . . . work on the farm." R. 16. However, this reasoning completely ignores Jason's explanation of the arrangement here, where his earnings maintained relative consistency both when he was working on the farm and after he could no longer work because of "familial relationship" and his family's desire to ensure him "a certain guaranteed income" so he could pay his insurance and medical bills. Pl.'s Br. at 7–8. Counsel explained this at the hearing as follows:

> [h]e can't work, and his family is doing the work, but he owns part of the farm. So they're giving him sick leave plus they're giving him whatever else he needs to have a minimal standard of living.

R. 30. The ALJ did not discuss this explanation; instead, he discounted the letter from the farm's accountant stating that Jason could not work and the farm has been paying him sick leave to help him pay his medical bills as "inconsistent" despite the explanation at the hearing that Jason's earnings were comprised of both sick leave and investment income in the amount "he needs to have a minimal standard of living." R. 30.

9

Finally, the ALJ's reliance on the tax and IRS forms is difficult to follow, as the ALJ does not use the actual definitions of "nonpassive income" from the tax code, but instead cites to a "general understanding" of the definition of "nonpassive" as suggesting active participation in a business, along with IRS publications defining "nonpassive income" as income derived from "material participation in the business." R. 16. Jason highlights the pitfalls of this approach when he points to the "variety of tests" listed in the IRS publication cited by the ALJ for determining whether an individual has "materially participated" in a business, including by (a) participating in the activity for more than 500 hours during the tax year. Pl.'s Br. at 9, Dkt. 17. Under that test an individual who works 44 hours a month would not be providing "significant services" under the social security regulations but could be "materially participating" in a business for tax purposes (44 hours x 12 months = 528 hours). Of course, this is only an illustration. The bottom line is that the ALJ's explanation of his use of the IRS and tax forms is confusing and not based on a clear understanding by the ALJ of the terminology and definitions – which is important because the definition of "significant services" is so precise.

Accordingly, I find that substantial evidence does not support the ALJ's determination that Jason engaged in substantial gainful activity during the relevant period, and thus, the ALJ's conclusion finding Jason not disabled was not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **GRANTING in part** Jason's Motion for Summary Judgment (Dkt. No. 16), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18) and **REMANDING** this matter for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case Michael F. Urbanski, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

          Entered: December 8, 2021

*Robert S. Ballou*

          Robert S. Ballou
          United States Magistrate Judge